# Order

**Michigan Supreme Court**
**Lansing, Michigan**

September 25, 2013

147235

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

In re:

The Honorable Sheila Ann Gibson
Judge, 3rd Circuit Court
Detroit, Michigan

SC: 147235

_____ /

On order of the Court, the Judicial Tenure Commission Decision and Recommendation is considered. Pursuant to MCR 9.225, we REMAND this matter to the Judicial Tenure Commission for further explication. We DIRECT the Judicial Tenure Commission to file a supplemental report within 56 days of the date of this order, explaining whether, in accepting the parties' stipulation, the Commission was aware of the substance of the allegations made concerning respondent in *In re Perry/Golphin Minors*, Court of Appeals Docket No. 265560 (complaint and order attached). If the Commission was not aware of the allegations, it shall explain whether such knowledge would have changed its decision to accept the parties' stipulation, and whether its recommendation of discipline would have differed with that knowledge. If the Commission was aware of the allegations, it shall explain the weight given that knowledge in the Commission's analysis of the standards set forth in *In Re Brown*, 461 Mich 1291, 1292-1293 (2000).

We retain jurisdiction.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 25, 2013



Clerk

h0918

# STATE OF MICHIGAN
## IN THE COURT OF APPEALS



In re Tremaine Perry

Ct. of Appeals No. **265560**
Lower Ct. No. 05-442,928

In re Curtis and Brian Golphin

Lower Ct No. 05-443,034

Tremaine Perry
     (a minor child)
Curtis Golphin
     (a minor child)
Brian Golphin
     (a minor child)
        Petitioners

v

Hon. Sheila Gibson Manning
3rd Jndicial Circuit Court
     Respondent

## COMPLAINT FOR ORDER OF SUPERINTENDING CONTROL
## BRIEF IN SUPPORT

By: **William Ladd P30671**
**LGAL for Petitioners**
**Legal Aid and Defender Association**
**645 Griswold, Room 2400**
**Detroit, Michigan 48226**
**(313) 967-9142, ext. 6303**



# STATE OF MICHIGAN
# IN THE COURT OF APPEALS

Tremaine Perry
    (a minor child-dob 11/29/05)
    and
Curtis Golphin
    (a minor child- dob 9/1/01) &
Brian Golphin
    (a minor child- dob 5/30/05)

Petitioners

v.

Hon. Sheila Gibson Manning
3rd Judicial Circuit Court

Respondent

Ct. of Appeals No. _____
Lower Ct. No. 05-442,928

Lower Ct. No. 05-443,034

### Complaint for Order of Superintending Control

**To the Honorable Judges of the Court of Appeals of the State of Michigan:**

The petitioner(s), who bring this Petition for Superintending Control, by and through their Lawyer Guardian ad Litem (LGAL) William Ladd of the Legal Aid and Defender Association allege as follows:

1. The petitioners are minor children who are the subjects of child protection proceedings brought in the 3rd Judicial Circuit Court's Family Division-Juvenile Section ("Juvenile Section").

2. Petitioner Tremaine Perry came to the attention of the Juvenile Court on or about June 13, 2005 based upon allegations that he had been seriously abused while in the care of his father Curtis Golphin and his stepmother Leah Golphin-Esparza.

3. The injuries to Tremaine included; a fractured left arm; multiple injuries and bruises on his face and head; contusions on his torso and on both legs; contusions on his liver and kidneys; and old fractures to at least 2 ribs.

1



4.As a result of these injuries Tremaine was removed from the home of the father Curtis Golphin and his stepmother Leah Golphin on or about June 9,2005.

5. On June 14,2005 a petition was filed by the Department of Human Services (DHS) requesting that the Juvenile Court take jurisdiction over Tremaine and terminate the rights of the father Curtis Golphin. The agency did not request the termination of the rights of mother Venus Perry who lives in New Jersey. She did not have physical custody of Tremaine after April 2005. **(see Petition No. 05-011771, Filed 6/14/05- Attached)**

6.On or about 6/28/05 the DHS filed a petition requesting termination of the parental rightsof Curtis Golphin and Leah Golphin, the parents of Curtis and Brian Golphin. That petition was based upon the factual allegations relating to the abuse of Tremaine Perry. **(see Petition No. 05-012020, Filed 6/20/05, Attached)**Those children were also removed from the home of the parents on or about 6/17/05.

7. The children Tremaine Perry, Curtis and Brian Golphin have remained in foster care since their placements in June 2005.

8.On June 28, 2005 both cases appeared for pretrials before a referee in the Juvenile Court. The parents requested that the case be heard by a judge of the court pursuant to **MCR 3.912.**

9. On 7/25/05 the Golphin case **(case No. 05-443,034)** was heard by Judge Virgil Clark Smith, substituting for Judge Sheila Gibson Manning. That case was continued to 8/8/05 to be heard along with its companion case before Judge Manning.

10. On 8/8/05 both cases were heard for pretrial by Judge Manning. At that hearing the court set a trial date for both cases for 11/16/05 and 11/17/05. The court set that date at the request of the father Mr. Golphin because he had a pending criminal case arising out of the same facts and he wished to have the child protection case heard after his criminal trial. The trial date was set over the objection of the Lawyer Guardian ad Litem for the children because the scheduling was well past the time requirements of **MCR 3.972(A).**[1] On that date Tremaine Perry had been in care 56 days and the Golphin children had been in care 52 days. Instead of setting an immediate trial date the judge set a continued pretrial for 8/23/05 to allow the counsel for Mr. Golphin to further investigate the circumstances of Mr. Golphin's criminal case.

11. On 8/23/05 counsel for Mr.Golphin again requested that the trial in the child protection case be continued to a later date than 11/16/05 because the criminal trial was set for 11/14/05. **(see 3rd Judicial Circuit Court No. 05-061132-Criminal)** The father Curtis Golphin and his wife Leah Golphin are out on bond awaiting their criminal trial. The trial date was set for 12/14 and 12/15/05. These dates were again set over the objection of the LGAL for the children because of the delays in holding the trial where the children are in placement outside the parents' home. By 8/23 both cases were already past the 63 days required in **MCR 3.972(A)** The trial date of 12/14/05 will be 188 days after the placement of the Golphin children and 192 days after the placement of Tremaine Perry.

---

[1] **MCR 3.972(A)** provides that:"If the child is in placement the trial must commence as soon as possible, but not later than 63 days after the child is placed by the court,..." The rule does allow postponement of the trial in three circumstances: on the stipulation of the parties; because process cannot be completed; or because the the court finds that the testimony of an unavailable witness is needed.

2

12. The extended delay of child protective trials where there are pending criminal charges against the parents is not restricted to the instant case but rather appears to be a general practice by Judge Manning, if not the whole Wayne County Circuit Court's Juvenile Division. In the case of the Austill/Redlinger children **(In re Jackie Austill (dob 8/31/98), Jacob Austill (dob 5/20/02), Elliot Redlinger (dob 12/16/04) Circuit Ct. No. 05-439,205, Petition No. 05-003638, Filed 2/28/05)** the children were placed on or about 2/23/05. In that case the child Elliot was found to have suffered a scellate fracture to the left side of his skull and bleeding behind his eye. Jackie and Jacob were also found to have marks and bruises allegedly caused by the mother. As a result of these injuries the mother Janet Austill and Elliot's father Todd Redlinger have been charged in the Wayne County Circuit Court's Criminal Division with charges arising out of the injuries to the children.

13. The Austill/Redlinger case is also assigned to Judge Sheila Gibson-Manning. The case was originally pretrialed by Judge Manning on 4/5/05 (41 days after the children's placement into foster care). The first trial date was set for 6/27/05 (the 124th day after placement) but it was continued to 9/12/05 and finally to 12/08/05 (the 288th day since the placement of the children. These continuances were due primarily to the fact that the parents' criminal cases had not been resolved and they had requested that the court continue the child protective case until after the resolution of the criminal case.

.14. Moreover there are numerous instances on Judge Manning's docket where she has continued cases well beyond the time periods required by the court rules and applicable Administrative Orders.

a) In the case of the Gavin/Rainey Children **Circuit Court No. 01-404,114** the children were placed into foster care on 11/24/04. The first trial date was scheduled for 3/22/05 and has been scheduled 4 times with the next trial date set for 10/25/05. By that date the children will have been in foster care 328 days without an adjudication on the issue of jurisdiction.

b) In the case of the Moorlet/Vaughn/Snowden/Thomas Children **Circuit Court No. 05-442,026** the children were placed into foster care on or about 5/12/05. The first trial date was set for 9/22/05, 133 days after the initial placement of the children. The trial was concluded on 9/22/05 and the case is now set for a dispositional hearing on 10/27/05. That 35 day interval is proper pursuant to **MCR 3.973(C).**

c) The case of the Steagner/Moore Children **Circuit Court No. 03-415,166** involves children who have been in foster care as temporary court wards since 2003. On 11/10/04 the Department of Human Services (DHS) filed a Petition to Terminate the parents rights pursuant to **MCL 712A.19b.** The case was subsequently assigned to Judge Manning and the first trial date set before her was 6/01/05, which was 202 days after the filing of the termination petition. The case was continued two more times to 9/21/05, 315 days after the filing of the petition. The case was again continued ("In Progress") to 11/01/05, 356 days after the filing of the petition. The case has not been concluded to this date. The period of 356 days (and counting) to conduct the hearing on the termination petition is almost 6 times the period required for a hearing on a petition for termination of parental rights.[2]

---

[2] **MCR 3.977(G)(1)(b)** requires that: "The hearing on a supplemental petion for termination of parental rights under this subrule must be held within 42 days after the filing of the supplemental petition. The court



d) In the case of the Smith/Williams/Griffin Children **Circuit Court No. 02-409,241** the children have been temporary wards of the court since 2002, on 10/14/04 the DHS filed a petition to terminate the parents' rights. The first trial date set before Judge Manning was on 5/2/05, 200 days after the filing of the termination petition. The case has since been continued 3 times with the next court date being 9/26/05, 347 days after the filing of the termination petition.

e) In the case of the Harmon Children **Circuit Court No. 02-409,754** the children have been temporary wards of the court since 2002. On 7/26/04 DHS, through its contract agency The Children's Center, filed its third petition to terminate the rights of the parents. The first trial date set before Judge Manning was 11/29/04(126 days after the filing of the termination petition) when the court heard some testimony from the petitioner Nicole Pilarski, a foster care worker from the Children's Center. The case was then continued 5 times, with limited testimony only being heard on 8/8/05. The case is now continued to 11/8/05, 438 days after the filing of the termination petition.

15. The five cases cited above are only a sample taken from Judge Manning's docket in the first 3 ½ weeks of September 2005. Taken together with the instant cases of Tremaine Perry and the Golphin Children, along with the case of the Redinger/Austill there is clear evidence that there is a practice by Judge Manning of continuing trials and termination hearings well beyond the requirements of the law.

Based upon the foregoing the children in the cases of Tremaine Perry and the Golphin Children ask that this court grant relief under a writ of superintending control because they cannot receive sufficient and timely relief from the trial court. The children ask for this court to grant superintending control to order immediate trials in the instant cases for the following reasons:

16. The court rules are very clear as to the time requirements for trials and termination proceedings in child protective proceedings. **MCR 3.972(A)** requires that if a child is in placement the "...trial must commence as soon as possible, but not later than 63 days after the child is placed by the court unless the trial is postponed..." for certain enumerated reasons. Those reasons are: on the stipulation of the parties; because process cannot be completed; or because the court finds that the testimony of a presently unavailable witness is needed. **MCR 3.972(A)(1-3)** None of those exception apply in the instant cases.

17. Similarly, in termination cases where the child is already a temporary ward of the court the court rules require that:

> 'The hearing on a supplemental petition for termination of parental rights under this subrule **shall be held within 42 days after the supplemental petition.** The court may, for good cause shown, extend the period for an addition 21 days." (emphasis added)

---

may, for good cause shown,l extend the period for an additional 21 days." As a result, the hearing can only be continued for a period of 63 days.

18. Moreover, the Supreme Court has adopted Caseflow Management Guidelines relating to the time requirements for hearings on child protective proceedings. Those rules provide that in these proceedings;

> "Where a child is in out-of-home placement(foster care), 90% of all original petitions should have adjudication and disposition **completed within 84 days from the authorization of the petition and 100% within 98 days." Supreme Court Administrative Order 2003-7 Caseflow Management Guidelines (emphasis added)**

19. The delays in these cases makes a mockery of the time requirements of the applicable court rules and the case management guidelines. The children have been in foster care for 3 months already and there is no guarantee that Judge Manning will actually complete these cases within the 6 month time frame that she has set for a trial on these very serious allegations. Clearly children should not be allowed to remain in the homes of parents who commit serious acts of abuse, but they should not have to wait many months for the court to resolve their circumstances. That is exactly the purpose of the time requirements set out in the rules and they should be taken seriously. This is particularly true where the children are the ones who have been removed from their homes while the parents remain in their home pending their criminal trial.

20. The pendency of a related criminal proceeding should not be used as a rationale to delay the trial on the child protective proceeding, even where the two cases arise out of the same circumstances. In particular the parents' rights against self incrimination would not be violated if the child protective case were heard before the related criminal case. In the case of **In re Stricklin, 148 Mich App 659 (1986)** this court held that there was no error where the Juvenile Court refused to adjourn a child protective trial where the parents had a pending criminal case arising out of the same factual circumstances. This court found that there was not a sufficient penalty exacted from the parents where they refused to testify at the juvenile proceeding to amount to a violation of their rights against self incrimination. This court explained that;

> "In summary, accepting appellants' premise that the increased risk of loss of parental rights was the penalty imposed upon them for their refusal to testify, it must be concluded that the testimony sought through such compulsion would have been nonincriminating. The compulsion of nonincriminating testimony is not the sort of compulsion contemplated by the Fifth Amendment. Any adverse consequences resulting from appellants' failure to testify cannot be said to have been created by the state."
> **148 Mich App at 665**

For the reasons stated above the fact that the parents have a pending criminal case should not provide a basis for the trial court to delay a trial on a child protective petition.

For all the foregoing reasons the children in the above named Perry and Golphin cases ask that this court grant superintending control over Judge Sheila Gibson Manning of the 3rd Judicial Circuit Court. The children further ask that this court order the trial judge to schedule and conduct to completion a trial on the instant petitions forthwith.

(Nos. 05-011771 and 05-012020). Moreover, this court should order that any order in this case should not provide a basis for the trial court to delay in any way any trials now pending before it. (see paragraph 14, snpra) Rather this court should take steps to insure that the trial judge takes immediate steps to expedite all pending child protective trials scheduled before her.

Respectfully submitted,

William Ladd P 30671
LGAL for Tremaine Perry
And Brian & Curtis Golphin
Legal Aid & Defender Assoc.
645 Griswold  Rm.2400
Detroit, Mi. 48226
Ph. 313 967-9142 ext.6303

Date: September 28, 2005

6



# STATE OF MICHIGAN
# IN THE COURT OF APPEALS

In re Tremaine Perry

Ct. of Appeals No. _____
Lower Ct. No. 05-442,928

In re Curtis and Brian Golphin

Lower Ct No. 05-443,034

Tremaine Perry
    (a minor child)
Curtis Golphin
    (a minor child)
Brian Golphin
    (a minor child)
        Petitioners

v

Hon. Sheila Gibson Manning
3rd Judicial Circuit Court
    Respondent

### COMPLAINT FOR ORDER OF SUPERINTENDING CONTROL
### BRIEF IN SUPPORT

By: William Ladd P30671
LGAL for Petitioners
Legal Aid and Defender Association
645 Griswold, Room 2400
Detroit, Michigan 48226
(313) 967-9142, ext. 6303

 

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................ II

STATEMENT OF QUESTIONS PRESENTED ........................................ III

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF FACTS ......................................................... 2

ARGUMENT .................................................................... 5


SUMMARY AND RELIEF REQUESTED ............................................... 12

i



# INDEX OF AUTHORITIES

## CASES

Lapeer County Clerk v. Lapeer Circuit Judges, 465 Mich 559 (2002)................................. 5

In re Gosnell, 234 Mich App 326 (1999)............................................................... 6

In re Stricklin, 148 Mich App 659 (1986)............................................................. 8

Matter of Vance A., 432 N.Y.S. 2d 137 (N.Y. Fam. Ct., 1980)........................................ 9

Phillips v. Deihm, 213 Mich App 389 (1995)..........................................................12

Baxter v. Palmigiano 425 U.S. 308; 96 S. Ct. 1551; 47 L.Ed. 2d 810 (1976)........................12

Matter of Johnson 142 Mich App 764 (1958)..........................................................12

## STATUES

MCR 3.302(D), MCL 600.310..........................................................................1

MCR 3.993..........................................................................................1

MCR 3.965..........................................................................................2

MCR 3.912..........................................................................................3

MCR 3.302, 7.203(C) and 7.206. MCR 3.302(D)........................................................5

MCR 7.203(C)(1)....................................................................................5

MCR 3.993..........................................................................................6

MCR 3.972..........................................................................................7

MCR 3.972(A).......................................................................................7

MCR 3.923(G).......................................................................................7

MCL 712A.19.......................................................................................10

MCL 712A.19a......................................................................................10

# STATEMENT OF QUESTIONS PRESENTED

I.   **ARE THESE TWO CONSOLIDATED CASES PROPERLY BEFORE THIS COURT AS A COMPLAINT FOR SUPERINTENDING CONTROL?**

Petitioners answer   "YES"

Respondent answers   "NO"

II.   **DOES THE TRIAL COURT HAVE A CLEAR LEGAL DUTY TO SCHEDULE A TIMELY TRIAL WHERE THE CHILDREN ARE IN FOSTER CARE PENDING TRIAL?**

Petitioners answer   "YES"

Respondent answers   "NO"

III.   **WILL THE PARENTS' RIGHTS AGAINST COMPELLED SELF INCRIMINATION BE VIOLATED BY CONDUCTING THE CHILD PROTECTIVE PROCEEDING BEFORE THE CRIMINAL TRIAL?**

Petitioners answer   "NO"

Respondent answers "YES"



# Statement of Jurisdiction

The instant cases are now pending before the 3rd Judicial Circuit Court's Family Division-Juvenile Section in child protective proceedings assigned to the Honorable Sheila Gibson Manning. The underlying companion cases are now set for trial on 12/14 and 12/15/05. That date was set by the court at a continued pretrial held on 8/23/05. The Court of Appeals has jurisdiction over this Complaint for Superintending Control pursuant to **MCR 3.302(D),MCL 600.310** This case is not yet appealable to the Court of Appeals because there has not been a trial or any appealable orders entered by the trial court. **See MCR 3.993**

1



## Statement of Facts

Tremaine Perry (dob 11/29/05) is a minor child who came to the attention of the Wayne County Circuit Court's Family Division-Juvenile Section (hereinafter referred to as the "Juvenile Court") on 6/9/05 when the Department of human Services (DHS) brought a petition to the Juvenile Court requesting that the court take jurisdiction over Tremaine as a result of alleged abusive behavior by his father Curtis Golphin and his stepmother Leah Golphin-Esparza. Tremaine had been ordered to be placed outside of his parents' home on 6/8/05. A preliminary hearing pursuant to **MCR 3.965** was initially scheduled for 6/9/05 before Referee Kathleen Walton Allen. That hearing was continued to 6/14/05 for further investigation by the DHS. On 6/14/05 the referee authorized the petition presented by the DHS. That petition alleged that Tremaine Perry had been seriously abused while in the care of his father Curtis Golphin and his stepmother Leah Golphin-Esparza. Those allegations of abuse included: a fractured left arm; multiple injuries and bruises on his face and head; contusions on his torso and both legs; contusions on his liver and kidneys; an old fractures to at least 2 ribs. **See Petition No. 05—011771, Filed 6/14/05.** The petition requested that the court terminate the rights of the father Curtis Golphin, but not the mother Venus Perry who lives in New Jersey. At the conclusion of the preliminary hearing the referee placed Tremaine into foster care pending trial.

On 6/20/05 a referee in the court conducted a preliminary hearing in the case of Brian and Curtis Golphin. Those two children have the same father as Tremaine Perry and their mother is Leah Golphin-Esparza. Curtis and Brian had been removed from their

2

parents care on or about 6/17/05. At the 6/20/05 hearing the referee authorized a petition with essentially the same allegations as the one in the Tremaine Perry case. That petition requested the termination of the rights of both parents. **See Circuit Conrt No. 05-443,034, Petition No. 05-012020, Filed 6/20/05.** That case was set for a pretrial before a referee on 6/28/05. The counsel for Mr. Golphin made a demand for a hearing before a judge pursuant to **MCR 3.912.** On 7/25/05 the Golphin case was heard by judge Virgil Smith. That case was continued to 8/8/05 and was combined eith the perry case before Judge Manning.

At a pretrial held on 6/28/05 in the Perry case the attorney for Mr. Golphin filed a request for a hearing before a judge, pursuant to **MCR 3.912.** The case was assigned to Judge Sheila Gibson Manning. The first pretrial was held before Judge Manning on 8/8/05. Over the objection the LGAL for the child the judge set a trial date for 11/16 and 11/17/05. The judge did so, in part, because the father and stepmother had a pending criminal case arising out of the same incidents. **See Circuit Ct. No. 05—61132-Criminal** Counsel for the father requested that the child protective case be heard after the criminal case, based upon a theory that the father's rights against self incrimination would be violated if the child protective case were heard first. The court also continued the pretrial to 8/23/05 at the request of counsel for the father, so that counsel could further investigate the circumstances of the father's criminal case.

At the continued pretrial held on 8/23/05 counsel for the father again requested an extension of the trial date in the child protective case because the father's criminal trial was set for 11/14/05. The LGAL for the child again objected to the delays in the trial(s) in both cases because Tremaine had already been in care for 75 days and the Golphin

3



children for 67 days, already past the court rules' requirement that the trial be held within 63 days, pursuant to **MCR 3.972(A).**. Rather than setting an immediate trial date the judge set trial dates of 12/14 and 12/15/05 over the continuing objections of the LGAL for the children. The court set the later trial date because counsel for the father requested time after the father's 11/14/05 criminal trial date to evaluate the results of that case. The presently scheduled trial date of 12/14/05 will be 188 days after the placement of Tremaine Perry into foster care and 180 days after the placements of Curtis and Brian Golphin.

4

## Argument

### I. THESE TWO CONSOLIDATED CASES ARE PROPERLY BEFORE THIS COURT AS A COMPLAINT FOR SUPERINTENDING CONTROL

This court has the authority to hear actions for Writs of Superintending Control pursuant to both statute and court rule. The Revised Judicature Act at **MCL 600.310** provides that:

> "The Court of Appeals has original jurisdiction to issue prerogative and remedial writs or orders as provided by rules of the Supreme Court, and has authority to issue any writs, directives and mandates that it judges necessary and expedient to effectuate its determination of cases brought before it."

The procedure and requirements for a writ of superintending control are set out in the court rules at **MCR 3.302, 7.203(C) and 7.206. MCR 3.302(D)** sets out the court's jurisdiction over superintending control:

> (1) The Supreme Court, the Court of Appeals, and the circuit court have jurisdiction to issue superintending control orders to lower courts or tribunals. In this rule the term "circuit court" includes the Recorder's Court of the City of Detroit as to superintending control actions of which that court has jurisdiction.
> (2) When an appeal in the Supreme Court, the Court of Appeals, the circuit court, or the recorder's court is available, that method of review must be used. If superintending control is sought and an appeal is available, the complaint for superintending control must be dismissed."

In the case of **Lapeer County Clerk v. Lapeer Circuit Judges, 465 Mich 559 (2002)** the Michigan Supreme Court noted that this court's authority to hear actions for superintending control is limited to actual cases and which when concluded, would result

5

in an order appealable to the Court of Appeals. **See MCR 7.203(C)(1).** If there is no specific case involved this court cannot exercise its limited superintending control power.

The circumstances of this case meet all the requirements of the law for an action of superintending control in this court. First, this case is not yet appealable to this court, because the trial court has not entered any appealable orders in the instant case. The issue before this court is the trial court's failure to hold a trial and to enter an order which would be appealable to this court, pursuant to **MCR 3.993.** Once the trial court holds the trial and/or disposition in this case the order from that determination would then be appealable. Similarly superintending control is appropriate when it can be demonstrated that the defendant has failed to perform a clear legal duty and there is the absence of an adequate legal remedy. **See In re Gosnell, 234 Mich App 326 (1999).** The trial court's failure to schedule, much yet commence a timely trial as required by the court rules is such a failure to perform a clear legal duty and that very inaction makes any other legal remedy unavailable. For all these reasons superintending control in this court is the proper action in this case.

## II. THE TRIAL COURT HAS A CLEAR LEGAL DUTY TO SCHEDULE A TIMELY TRIAL WHERE THE CHILDREN ARE IN FOSTER CARE PENDING TRIAL

In the instant case the trial judge has set a trial date more than 180 days after the children were placed into foster care by the Department of Human Services. This delay is

6

in clear violation of the applicable court rules and it violates the children's interest in a timely resolution of their case so that they can receive appropriate services and so that the court and the DHS can take steps to proceed on a long term plan for their well being. Moreover the fact that the parents have criminal charges pending arising out of the same circumstances as the instant case should not be considered grounds for delay in the child protective cases involving these children.

The timing for a trial in a child protective proceeding is governed by the court rules. **MCR 3.972** is the court rule governing trials in these cases. It states, in relevant part that:

> "If the child is in placement, the trial must commence as soon as possible, but not later than 63 days after the child is placed by the court unless the trial is postponed:
> (1) on stipulation of the parties;
> (2) because process cannot be completed; or
> (3) because the court finds that the testimony of a presently unavailable witness is needed." **MCR 3.972(A)**

The court rules also have specific provisions for adjournments in child protective proceedings:

> 'Adjournments of trials or hearings in child protective proceedings should be granted only:
> (1) for good cause,
> (2) after taking into consideration the best interests of the child, and
> (3) for as short a period of time as necessary. **MCR 3.923(G)**

Finally the Michigan Supreme Court has promulgated Caseflow Management Guidelines which set out standards for when cases are to be completed. In Child Protective Proceedings the guidelines provide that:

> Where a child is in out-of-home placement (foster care), 90% of all original petitions should have adjudication and disposition completed within 84 days from the authorization of the petition



and 100% within 98 days. **Administrative Order 2003-7 (Circ Court Guidelines #4)**

In the instant case the court is in clear violation of the court rules and the Caseflow Management guidelines. Instead the court seems to be ignoring the time requirements by setting the case for trial 180 days after the placement of the children into foster care. Moreover, there is no guarantee that the judge will complete the trial and disposition on the dates set in December. As noted in the Complaint for Superintending Control **(Attached, paragraph 14)** Judge Manning all too often continues trials well beyond their original trial dates.

The fact that there is a pending criminal trial involving the parents should provide a rationale or good cause for continuing this case to the time set by the trial judge. While the parents may be put in the quandary of having to decide whether or not to testify in the child protective proceeding to offer a defense to possible termination of their parental rights, that alone is not enough to constitute a violation of their rights against compelled self incrimination. This court has held in a similar factual circumstance that where parents may wish to present nonincriminating evidence at the termination hearing they cannot then argue that they would be compelled to present incriminating evidence at their criminal trial. In the case of **In re Stricklin, 148 Mich App 659 (1986)** this court held that the compulsion of nonincriminating testimony was not the sort of compulsion contemplated by the Fifth Amendment. As a result it was not error in that case for the trial court in that case to deny the parents' request for an adjournment of the child protective proceeding until after their criminal trial. The same reasoning should apply here.

8



Similarly public policy supports a finding that the child protective proceeding should be concluded expeditiously and if necessary before a related criminal trial. A new York juvenile Court was faced with the same circumstances as this case in the case of **Matter of Vance A., 432 N.Y.S. 2d 137 (N.Y. Fam. Ct., 1980).** In that case the court discussed the competing interests involved when a parent is faced with what it described as a 'difficult choice' of whether or not to testify or assert the right against self incrimination. The **Vance A.** court noted that:

> "Furthermore, public policy, which must be considered in determing whether the "imposition of these difficult choices" is constitutional supports constitutionality herein, for the prompt conclusion of child abuse proceedings is essential to child welfare. Expedition is important because it is only if and after the allegations of abuse are sustained at a fact-finding trial that the Family Court has authority to determine the best plan for the child's longterm care. However, criminal charges based on acts of alleged child abuse generally pend for inordinate periods,
> Frequently such criminal cases are dismissed because of the impossibility of mustering proof beyond a reasonable doubt as to guilt for injuries a child suffers at home. But such dismissals are long delayed due to the prosecutor's understandable reluctance to abandon a case when a child has died or been seriously injured according to hospital or autopsy reports as the result of unexplained blows, burns or wounds. Thus, a practice of adjourning child abuse proceedings because of the pendency of a criminal prosecution against a parent, customarily results in adjournments for many months, with the child in temporary residences in the interim; he is thus deprived , a life-crisis, of care by relatives or others who can give him a sense of lasting love, nurture and security. Accordingly, though Vance is in foster care and respondent is incarcerated, the argument of respondent's counsel as to the unimportance from a public policy standpoint of a forthwith trial in the instant abuse case , is unpersuasive. The child's welfare requires a long-term plan for stable loving care by a substitute parent if respondent is an unfit mother, and an abuse trial is the essential first step for such planning" **Matter of Vance A. supra at 142.**



The same public policy considerations are true in the instant case. In fact, under Michigan law the court is normally required to conduct a Disposition Review Hearing to review the progress of services being provided to the children and the parents within 182 days of the placement of the children and every 91 days thereafter. **MCL 712A.19** In addition the court is required to hold a Permanency Planning Hearing within 12 months after the placement of the children. **MCL 712A.19a** In this case the court is clearly delaying the provision of any necessary services to the children and the parents and if the court does not terminate the parents' rights at the initial disposition, the court will be obligated to revisit the issue of permanency soon after the conclusion of this trial. This result makes no sense and it clearly harms the children's interest in receiving appropriate services in a timely manner. For all these reasons the court must be ordered to hold and immediate trial in these companion cases.

### III. THE PARENTS' RIGHTS AGAINST COMPELLED SELF INCRIMINATION WILL NOT BE VIOLATED BY CONDUCTING THE CHILD PROTECTIVE PROCEEDING BEFORE THE CRIMINAL TRIAL

In these companion cases the apparent rationale for delaying the child protective proceeding(s) is that the respondent father Curtis Golphin (the father in both cases) and the respondent mother Leah Golphin-Esparza (the mother in the Golphin case) are charged with criminal offenses arising out of the same acts which gave rise to the child protective proceeding. However, this is not a proper basis for adjourning a trial in a child protective case, especially where the children are in foster care. The parents do not have

Fifth Amendment rights which would be significantly compromised if the neglect/abuse trial were to be expeditiously before the criminal trial. The children's (and the public's) interest in a speedy determination on the allegations in this case clearly outweigh the parent's desire to delay the trial. **See Petitioner's issue II, supra.**

This court has been presented with the same issue in the case of **In re Stricklin, 148 Mich App 659 (1989).** In Stricklin the parents were appealing the termination of their parental rights. The basis of the case in the Juvenile Court was extreme sexual abuse against two of the children by both parents. The parents were also charged with and subsequently convicted of various counts of criminal sexual conduct in the criminal court. On appeal from the termination case the parents argued that it was error where the juvenile Court refused to adjourn the juvenile proceedings pending the outcome of the criminal proceedings against the parents. This court found that the denial of the adjournment was not error and that the scheduling of the juvenile proceeding first did not violate the appellants' right against compelled self incrimination. This court held that "...whatever compulsion was present was insufficient to have amounted to a breach of the parents' rights to be free against compelled self-incrimination." **In re Stricklin, supra at 664.** In discussing its holding this court noted that for the parents' testimony at the termination to be helpful it would not have been incriminating. Logically then this court reasoned that the use or compelled use of non-incriminating testimony would not have violated the parents' Fifth Amendment rights. It was therefore not error for the Juvenile Court to deny the parents' request for an adjournment and for the parents to be faced with the issue of whether or not to testify at the juvenile proceeding first. This is exactly the circumstance in this case. If the parents wish to testify in the child protective

11

proceeding to offer a defense they can do so. By doing so they would presumably want to present testimony which would not be incriminating.

This conclusion is consistent with the case law in other state courts and with prevailing federal cases on analogous issues. In the New York case of **Matter of Vance A., 432 N.Y.S. 2d 137 (1980)** the court found that it was proper to deny a request for an adjournment where the parent had concurrent juvenile and criminal cases arising out of the same facts. The court found that it was proper to force the respondent mother to choose between foregoing her fight to testify in a child abuse trial or risk self-incrimination in the related criminal prosecution. The court described this as one of the difficult choices which a person can legally be required to make. **See Phillips v. Diehm, 213 Mich App 389 (1995); Baxter v. Palmigiano, 425 U.S. 308; 96 S.Ct. 1551; 47 L.Ed. 2d 810 91976); Matter of Johnson, 142 Mich App 764 (1985).**

It is therefore not a violation of the parents' rights against self incrimination for the court to hold the child protective proceeding before the related criminal trial.

## Relief Requested

The children, as petitioners, ask that this court take superintending control over the trial court in these cases and that this court order that the trial court should schedule and hold to conclusion forthwith a trial on the instant petitions. **No. 05-011771, Case No. 05-442,928 (Tremaine Perry) and No. 05-012020, Case no. 443,034 (Golphin Children).** The timeliness of the instant trial should not in any way delay or interfere

12

# Court of Appeals, State of Michigan

## ORDER

In re Perry/Golphin Minors

Docket No. 265560

LC No. 05-442928, 05-443034

Brian K. Zahra
Presiding Judge

Michael J. Talbot

Karen Fort Hood
Judges

The Court orders, pursuant to MCR 7.206(D)(3) and MCR 7.216(A)(7), that trial in the above-captioned matter shall commence within seven days of the Clerk's certification of this order. The Court directs Chief Judge Mary Beth Kelly to monitor the trial to ensure that it is conducted efficiently and without undue delay, consistent with Docket Directive 2005-10 issued on October 21, 2005. The Court declines to address the other cases referenced in the complaint for superintending control because those cases are not properly before this Court.

The Court retains no further jurisdiction.

_____
Presiding Judge



A true copy entered and certified by Sandra Schultz Mengel, Chief Clerk, on

OCT 3 1 2005
_____
Date

_____
Chief Clerk

MARY BETH KELLY
*CHIEF JUDGE*



(313) 224-8220

701 COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVENUE,
DETROIT, MICHIGAN 48226-3413

## DOCKET DIRECTIVE 2005-10

### STATE OF MICHIGAN
### THIRD JUDICIAL CIRCUIT

SUBJECT:   Pending Child Protective Cases on the Docket of Judge Sheila Gibson
Manning

This Docket Directive is issued pursuant to the authority of the Chief Judge of the Third
Judicial Circuit Court under MCR 8.110(C)(2).

## IT IS ORDERED THAT:

1.  With regard to In re Perry, Court of Appeals Case No. 265550, and the other Juvenile
Division matters referenced therein that are pending before Judge Sheila Gibson
Manning, Judge Manning shall resolve all seven cases referenced in the Perry
complaint within 60 days of the date of this Docket Directive.

2.  The Presiding Judge of the Juvenile Section will monitor Judge Manning's progress
on these matters to ensure that the cases are resolved in accord with this Docket
Directive.

3.  The Presiding Judge of the Juvenile Division and the Chief Judge will monitor Judge
Manning's monthly report of aging cases for the next twelve months to either resolve
or reach a plan for resolution of any cases that are nearing or over the applicable time
standards.

4.  Judge Manning's attendance will be monitored by the Presiding Judge of the Juvenile
Division on a daily basis for the next twelve months.

Mary Beth Kelly
Chief Judge
Third Judicial Circuit of Michigan

Dated: October 21, 2005